ELIZABETH BARFIELD ET ALS. v. F. L. CARR, ADMINISTRATOR OF A. R. HINSON, ET AL.

(Filed 6 October, 1915.)

**1. Wills—Cancellation in Part—Lapsed Legacies—Residuary Clause—Interpretation of Statutes.**

A will may partially be revoked in its material parts by canceling, tearing, etc.; and where the testator has named several beneficiaries in a residuary clause, and it appears upon the face of the will that several of these names have been run through with a pen, and the intention of the testator to revoke has been established, the beneficiaries whose names have been thus erased take nothing, and the whole estate, under the residuary clause, goes to the others therein named, together with such legacies as may have lapsed. Revisal, sec. 3142.

**2. Wills—Cancellation in Part—Evidence—Declarations.**

Where it appears upon the face of a will that the names of certain beneficiaries in the residuary clause have been stricken out by pen, evidence of declarations of the testator made since the execution of the will, that he meant to strike the parties from the will, and that the witness was to see that they did not share in his estate, are competent.

**3. Wills—Cancellation in Part—Trials—Burden of Proof.**

In an action brought to interpret a will and declare it canceled in part as to certain beneficiaries whose names thereon appear to be marked out by pen, the burden of proof is on the plaintiffs.

APPEAL by defendants from *Connor, J.,* at the February Term, 1915, of GREENE.

Civil action tried upon these issues:

1. Did A. R. Hinson draw the pen lines through the names of Lillian Phillips, Alex. Hagan and Minnie Taylor and through the words giving to each one share, as appears in item 6 of his last will and testament, as alleged? Answer: "Yes."

2. If so, did the said A. R. Hinson draw said lines through said names and words with intent to cancel or obliterate so much of said will as gave to Lillian Phillips, Alex. Hagan and Minnie Taylor to each one share of his estate? Answer: "Yes."

3. Did A. R. Hinson draw the pen lines through the words "of my nephew, Will Hinson, one share," as appears in item 6 of his last will and testament, as alleged? Answer: "Yes."

4. If so, did the said A. R. Hinson draw said lines through said words with intent to cancel or obliterate so much of said will as gave to Hannah Hinson one share of his estate? Answer: "Yes."

From the judgment rendered, the defendants appealed.

*Jarvis & Wooten for the plaintiffs.*
*Albion Dunn, W. F. Evans and J. Paul Frizzelle for defendants.*

BROWN, J. This action is brought to determine the rights of plaintiffs and defendants under the will of Adam Hinson. The will was found soon after testator's death, the sixth item being canceled and obliterated in part as follows:

"6. It is my will and desire that all the residue of my property, after the sale of the real estate provided in above section, shall be divided equally and paid over, share and share alike, to each of the following, towit:

"To my niece Elizabeth Barfield one share.

~~"To my niece Lillian Phillips one share.~~

A. R. Hinson.

~~"To my nephew Alex. Hagan one share.~~

"To my niece Sunie Hinson one share.

"To my niece Dicie Hinson one share.

"To my niece Hannah Hinson, the wife

~~of my nephew Will Hinson, one share.~~

A. R. Hinson

~~"To my niece Minnie Taylor one share.~~

"To my niece Matilda Barfield one share."

It was admitted by all parties that the will was duly executed by A. R. Hinson, and that the lines drawn through the words in the sixth item of the will were made after the said testator signed and executed the will. It was also admitted that Sunie Hinson, one of the devisees, died during the lifetime of the testator.

This action was brought by the plaintiffs against Hannah Hinson and the defendants whose names appear to have been canceled, in which they set up that they were entitled to the entire proceeds of the estate devised under item 6 of the will, and ask for an interpretation of the will. The defendants deny the cancellation of the legacies to them was the act of the testator, or that he intended to revoke them, and they further contend that in any event if revoked those shares would not go into the residuum, but claim that as to those the testator died intestate.

It is well settled that there may be a partial revocation of a will by canceling, tearing, etc., as to material parts. *In re Wellborn Will,* 165 N. C., 636; *Cutler v. Cutler,* 130 N. C., 1.

To constitute an effective revocation there must appear some manifest act or symbol of destruction, and then there must appear the intention of the testator to revoke. In the case at bar the jury have found both the act and the intention. In submitting those issues, the court prop-

erly put the burden on plaintiffs upon each issue, and in every respect the charge is free from error and is a clear presentation of the case to the jury.

There are only two assignments of error on this appeal that we deem it necessary to discuss:

1. The court permitted the introduction of witnesses who testified as to conversations with testator after his will was executed, in which he told these witnesses that he meant to strike out of his will the names of these defendants and to see that they did not share in his estate. The admissibility of such evidence is fully discussed *In re Shelton's Will,* 143 N. C., 221, cited and approved *In re Wellborn, supra,* and its competency upheld.

Those cases follow *Reel v. Reel,* 8 N. C., 248, in which it is said by *Chief Justice Henderson:* "In our minds, to reject the declarations of the only person having a vested interest and who was interested to declare the truth, whose fiat gave existence to the will, and whose fiat could destroy, and in doing the one or the other could interfere with the rights of no one, involves almost an absurdity; and (with due deference to the opinions of those who have decided to the contrary, we say it) they are received, *not* upon the ground of their being a part of the *res gestæ,* for whether they accompany an act or not, whether made *long before or long after* making the will, is entirely immaterial as to their competency; those circumstances go to their weight or credit with the tribunal which is to try the facts, and the same tribunal is also to decide whether the declarations contain the truth or are deceptive, in order to delude expectants and procure peace." See, also, 3 Wigmore on Ev., sec. 1738.

2. The other question we will consider relates to the disposition the law makes of the legacies revoked by cancellation and the one that lapsed by the death of the legatee during the lifetime of the testator.

We are of opinion that such legacies fall into the residuum and go to the residuary legatees under section 3142, Rev., which reads as follows: "Unless a contrary intention appear by the will, such real estate or interest therein as shall be comprised or intended to be comprised in any devise in such will contained, which shall fail or become void by reason of the death of the devisee in the lifetime of the testator, or by reason of such devise being contrary to law, or otherwise incapable of taking effect, shall be included in the residuary devise (if any) contained in such will."

The point is expressly decided in *Duckworth v. Jordan,* 138 N. C., 525; *Saunders v. Saunders,* 108 N. C., 327; *Battle v. Battle,* 116 N. C., 161.

No error.