# Stuart et al. v. McWhorter et al.

(Decided March 17, 1931.)

ROBBINS & SMITH for appellants.

CARR & CARR for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Mrs. Jennie B. Kirkland died December 25, 1928, leaving a will dated March 5, 1923, by which she devised all of her estate, after the payment of her debts, to her husband, G. W. Kirkland, for life and on condition that he remain single. Clause 3 of the will originally read as follows:

> "At the death of my said husband, G. W. Kirkland, I desire that if any remainder of said estate exist that same be divided equally between my brothers, L. R. McWhorter, H. McWhorter, Jim McWhorter and Lon McWhorter, and my nieces, Lillian Kirkland Stuart and Myrta Kirkland Owen, each of the said parties to share and share alike."

Of the devisees in the above clause L. R. McWhorter was Mrs. Kirkland's brother of the whole blood, while H. McWhorter, Jim McWhorter, and Lon McWhorter were her half-brothers. Lillian Kirkland Stuart and Myrta Kirkland Owen were the nieces of G. W. Kirkland, and of no blood relation to Mrs. Kirkland.

When the will was discovered and probated that portion of clause 3 beginning with the words "any remainder" and ending with the words "share and share alike" was crossed out and numerous x's made with a typewriter were placed on and above the words. The will was probated in the county court with the canceled words omitted.

After the death of G. W. Kirkland on June 12, 1929, Lillian Kirkland Stuart and Myrta Kirkland Owen, his nieces, appealed from the order of probate to the Fulton circuit court insisting that the whole of clause 3 should have been probated on the ground that the cancellation was not made by the testatrix and that the words canceled were still legible. On the hearing the law and facts were submitted to the court without the intervention of a jury. The court found as a matter of fact that the will was executed by the testatrix on March 5, 1923, in the manner and form prescribed by statute; that she retained the will in her own possession until her death; that subsequent to such execution she undertook to revoke by cancellation the third paragraph thereof providing for the distribution of her estate at the death of her husband, such attempt having been made by use of a typewriter and by making horizontal lines and the letter "x" over all the lines and words composing said third paragraph, but leaving the language of said entire paragraph wholly legible. The court then concluded as a matter of law that the acts so done by the testatrix were effective as a revocation of the third paragraph of the will by cancellation, and that she died intestate as to her entire estate except the devise to her husband for life. Judgment was entered accordingly, and the nieces appeal.

Under our statute, in addition to other methods of revocation, a will or any part thereof may be revoked "by the testator, or some person in his presence, and by his direction cutting, tearing, burning, obliterating, cancelling or destroying the same, or the signature thereto, with the intent to revoke." Kentucky Statutes, section 4833. Brown's Will case, 1 B. Mon. 56, 35 Am. Dec. 174; Tudor v. Tudor, 17 B. Mon. 383.

The facts developed on the hearing are these: Mrs. Kirkland and her husband lived in and conducted a small hotel or rooming house in a two-story building owned by Mrs. Kirkland and situated in Fulton. Mrs. Kirkland was the head of the business, and had an iron safe with a combination lock in which she kept papers. The will in

question was prepared by Mr. J. F. Royster and signed and witnessed in accordance with the statute. A day or two after the death of Mrs. Kirkland, Mr. Royster and her husband opened the safe and found the will. When found, the cancellations were on the will. It was taken to the county seat and left for probate. There was evidence that Mrs. Kirkland had a typewriter which she knew how to use and did use in connection with her business. There was also evidence by Miss Bess Morris that Mrs. Kirkland told her that she was going to take the typewriter and mark out the part of the will she did not like, and that some time later she told her she had marked out the part she did not like and thought she had made it all right. Though it was shown that Mr. Kirkland had access to the safe, the evidence does not justify the conclusion that L. M. McWhorter or any one else ever had access to, or entered, the safe prior to the death of Mrs. Kirkland. It does not appear that Mr. Kirkland's relations with his nieces were unfriendly, and it is not to be presumed that he made the cancellation for the purpose of depriving them of their share in the estate. In our opinion the evidence fully sustains the trial court's finding that the cancellation was made by the testatrix with the intention to revoke.

But the point is made that the evidence of Miss Morris as to the declarations of the testatrix was not admissible, and we are referred to the celebrated case of Throckmorton v. Holt, 180 U. S. 552, 21 S. Ct. 474, 45 L. Ed. 663. In Atherton v. Gaslin, 194 Ky. 460, 239 S. W. 771, we refused to follow the rule announced in that case, and held after a review of the authorities that on the issue of forgery of a holographic will declarations of testator made before execution of the will that he intended to leave his property to the person named in the will as beneficiary, and declarations made after the execution of the will that he had made a will making such beneficiary sole devisee, were admissible, where corroborative of other evidence tending to show that the will was in the handwriting of testator. While, in view of the rule that both the act of revocation and the intent to revoke must concur, and that either without the other is insufficient to effect a revocation, mere declarations of the testator unaccompanied by any act are not sufficient to show a revocation, no reason is perceived why declarations of an intention to revoke, followed by the act, as well as declarations subsequent to the act that the act

had been performed, are not admissible in corroboration of other evidence to show both the act by the testator and the intent with which it was done. Indeed such is the prevailing view on the question. In re Shelton's Will, 143 N. C. 218, 55 S. E. 705, 10 Ann. Cas. 531; Barfield v. Carr, 169 N. C. 574, 86 S. E. 498; In re Saunders' Will, 177 N. C. 156, 98 S. E. 378; Burton v. Wylde, 261 Ill. 397, 103 N. E. 976; Cummins' Estate, 37 Pa. Super Ct. 580; Page on Wills (2d Ed) sec. 779.

The main insistence is that the revocation was not effective, as the stricken words were still plainly legible. The cases relied on do not sustain this view. In Gains v. Gains, 2 A. K. Marsh, 190, 12 Am. Dec. 375, there was evidence that the testator intended to revoke, but was prevented by the conduct of another. In holding that this did not amount to a revocation, the court merely gave effect to the long-established rule that the mere intention to revoke, uncoupled with a revoking act, was not sufficient. In Toebbe v. Williams, 80 Ky. 661, the testator asked his attorney to suggest such verbal corrections as he thought advisable. The attorney read the will over and made four unimportant suggestions in pencil between the lines of the pen and ink writing, and in the unoccupied space at the end of the lines. Inasmuch as the testator did not ask the attorney to make the corrections, but only asked for suggestions, and there was no proof that the testator ever adopted any of the suggestions as part of his will, it was held that the paper must be treated as if the suggestions had not been made. It was further held that evidence of verbal statements by the testator after making his will according to the forms of law that he had made no will did not amount to a revocation. In Trice v. Shipton, 113 Ky. 102, 67 S. W. 377, 23 Ky. Law Rep. 2392, 101 Am. St. Rep. 351, the court reaffirmed the rule that the intention to do the act could not be substituted for the act itself, and held that the fraud of testator's wife, the sole devisee under his will, in falsely representing that his desire to have the will destroyed had been carried out, whereby he was prevented from destroying the will or executing another, did not operate to revoke the will. All that was held in Miller v. Harrell, 175 Ky. 578, 194 S. W. 782, was that the destruction at a distance from testator of his will by another, at his direction, when ratified by him, is not equivalent to his act, or in his constructive presence within Kentucky Statutes, sec. 4833, authorizing a revo-

cation of will by testator or some person in his presence and by his direction destroying it with intent to revoke. In Bohleber v. Rebstock, 255 Ill. 53, 99 N. E. 75, 41 L. R. A. (N. S.) 105, Ann. Cas. 1913D, 307, the court ruled that the mere intention of the testator to revoke his will, unaccompanied by any act on his part to execute that intention, did not revoke the will, though the execution of the intention was frustrated by the fraud and improper conduct of persons benefited by the will not being revoked. In Gardner v. Gardiner, 65 N. H. 230, 19 A. 651, 8 L. R. A. 383, the court held that an interlineation and erasure by testatrix changing a provision of the will where the word erased is not so obliterated as to be illegible was not a revocation, but an alteration, and, if the instrument as altered is not executed, as required by the statute, to make a valid will, codicil, or instrument of revocation, the will remains, intact as before. In Merrill v. Boal, 47 R. I. 274, 132 A. 721, 45 A. L. R. 830, the court, after deciding other questions not material to this case, used some additional language to the effect that attempts to modify wills in striking out parts or inserting new ones without complying with the statutory formalities are without effect upon the will provided the original language remains legible. As we see it the effect of legibility after compliance with a statute like ours was not involved, and the case is not authority on the question.

Not only do the above cases fail to sustain appellants' contention, but the decided weight of authority is to the effect that cancellation may be effected by drawing lines through certain words with the intention to revoke even though the words crossed out may still be legible. In re Love's Will, 186 N. C. 714, 120 S. E. 479; Michigan Trust Co. et al. v. Fox, 192 Mich. 699, 159 N. W. 332; Home of the Aged of the Methodist Episcopal Church of Baltimore City v. Bantz, 107 Md. 543, 69 A. 376; Page on Wills, vol. 1, page 643, sec. 406; Russell v. Tyler, 224 Ky. 511, 6 S. W. (2d) 707. In Schouler on Wills, vol. 1, sec. 597, the rule is thus stated: "In this country in many states revocation by cancellation is still effective, and cancelling or obliterating are acts very liberally construed at the old law; and as distinguished from destruction or defacing the writing, so as to leave it illegible, the act implies that the instrument is still preserved in legible shape, but with something upon it which indicates that the will (or at least some portion of it, if revocation

be pro tanto) has ceased to stand according to the testator's original intention.'' Our statute is of the kind referred to. It provides for canceling, as distinguished from other methods that would have the effect of destroying or effacing the writing, and we are constrained to the view that the placing of the horizontal lines and the x's on the words in the third clause of the will, with the intent to revoke, had the effect of revoking that clause, although the words were still legible.

Judgment affirmed.