## Clemens et al. v. Richards et al.

February 28, 1947.

Sidney B. Neal, Judge.

Claude E. Smith for appellants.

R. Miller Holland and H. A. Birkhead for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

Vitula Killinsworth, a resident of Daviess county,

died September 28, 1943. Her husband, H. H. Killinsworth, and her son by a former marriage, Montgomery Clemens, survived her. On October 2, 1943, H. H. Killinsworth qualified as administrator of his deceased wife's estate, and thereafter a carbon copy of a will executed by Vitula Killinsworth on June 22, 1943, was presented to the county court of Daviess county, and, upon proof that the original had been lost, was admitted to probate on November 22, 1944. The First Owensboro Bank & Trust Company was named in the writing as the executor thereof, and it qualified as such executor. H. H. Killinsworth and Montgomery Clemens appealed from the order of the county court admitting to probate the copy of a paper purporting to be the last will of Vitula Killinsworth, and a trial was had before a jury in the Daviess circuit court which resulted in a verdict and judgment to the effect that the paper is the last will of Vitula Killinsworth. H. H. Killinsworth and Montgomery Clemens have appealed.

In order to establish a lost will, it is incumbent upon the proponent to prove by clear, satisfactory and convincing testimony (1) the due execution of the instrument; (2) its contents; (3) that it has been lost and cannot be found; and (4) the continued existence of the will unrevoked by the testator. It is conceded that the first three essentials have been satisfactorily established, but appellants insist that the fourth essential, to wit, the continued existence of the will unrevoked by the testator, has not been established, especially when certain evidence which they claim is incompetent is eliminated.

Vitula Killinsworth was a well-known and respected colored woman of Owensboro, Kentucky, who had taught in the public schools for many years, and had accumulated considerable property. She married H. H. Killinsworth six or seven years before her death. On June 22, 1943, she went to the office of William L. Wilson, an attorney at law, who, at her direction, prepared her will which was signed by the testatrix and witnessed by Mr. Wilson and Eileen Troutman, his stenographer. The will was delivered to the testatrix, and Mr. Wilson retained a carbon copy. In the will the testatrix, after providing for the payment of her debts and funeral expenses, bequeathed $500 to the Fourth Street Baptist Church of Owensboro, Kentucky; $200 and her piano to

her sister, Frances Richards of Chicago, Illinois; $200 to her niece, Georgetta Roberts, of St. Louis, Missouri; $25 to Wilford McGruder of Owensboro; and certain articles of furniture and other personal property to Mrs. Ozetta Sleet, Florence Perkins, and Roxie Roberts all of Owensboro. She bequeathed a dining room suite to the Mary Hardin Home of Owensboro. In Item 6 of the will she bequeathed to her son, Montgomery Clemens, of Chicago, Illinois, the sum of $75 and all of her living room furniture. Then this appears in Item 6: ''No larger bequest is made to my son for the reason that his father and I assisted him in obtaining five years of college work at Fiske University in Nashville, Tennessee, and for the further reason that neither his father or I or my estate is indebted to him or his wife for any sum of money.'' In Item 11 of the will she bequeathed to her husband, H. H. Killinsworth, all of her linens, towels, and bedding, and in Item 12 she devised to him during his natural life her house and lot located at 838 Moreland Street in Owensboro, and at his death to her grandson, Montgomery Clemens, Jr., of Chicago, Illinois. In Item 13 she directed that certain parcels of real estate in Owensboro be sold by her executor for the purpose of paying her debts, the cash bequests, and all of the inheritance taxes that might be due from any of the beneficiaries. In Item 14 of the will she gave the residue of her estate to Fiske University in Nashville, Tennessee.

At the time the will was executed Montgomery Clemens was in military service and was stationed near Atlantic City, New Jersey. He and his wife had visited his mother in Owensboro in May, 1943, while he was on furlough. They remained one day. He was then about 38 years of age. It seems that some difficulty between them arose on this visit, and he did not write to his mother until a few days before her death. On September 23, 1943, Montgomery Clemens wrote a letter to his mother in which he reproached her for what he termed unkind treatment of his wife. William L. Wilson testified that he had prepared a will for Vitula Killinsworth in the summer of 1941, and that she told him on the occasion when the last will was written that conditions had changed and she wanted to execute a new will. She said that her son and his wife had visited her, and he had requested her to change her will and leave her property

to his second wife. She then spoke disparagingly of the second wife, and said that she did not want any of the property she had accumulated to go to any one who might waste it; that her son had been given a good education, and she felt that she had done all for him that she should do and she desired that her property go in the way she disposed of it in the last will. This testimony was objected to, and we shall advert to it later. Ozetta Sleet testified that she had been a close friend of the testatrix for fifteen years; that she saw the testatrix about a week before her death, and talked with her about her will several times during the summer after she made it. She saw her about once a week. On the morning of September 28, H. H. Killinsworth came to her home and told her that his wife was dead. He also told her that his wife had made a will, but that he had not found the key to the box that contained the will. A few hours later he returned and told her that he had found the will. Vitula Killinsworth died some time between 10:30 p. m., September 27, and 5 a. m., September 28, 1943, and was buried on October 1, 1943. Everett Long, county judge of Daviess county, testified that H. H. Killinsworth made application for appointment as administrator on October 2, 1943. He told Killinsworth that he had information that the deceased had left a will, and suggested that he should try to locate it. Killinsworth returned later in the day and said that he could not find the will. Montgomery Clemens was with him on the second trip. Judge Long testified in part as follows: ''He (Killinsworth) told me that there was a box there that had some of her papers in it and he later brought that box to me and the box had been cut open with a can opener and I went through the papers and there was no will in the box, but it was cut open.''

Roxie Roberts Deal, an intimate friend of the testatrix, testified that she had a conversation with the testatrix on Wednesday before she died, in which the will was discussed, and the testatrix told her that she had given her little house to her husband for his lifetime. Mabel McGruder is the wife of Wilford McGruder, a minister. She and her husband were living in Paducah, Kentucky, in September, 1943. H. H. Killinsworth talked with her over long distance telephone shortly after his wife died, and told her that he wanted her husband, Wilford Mc-

Gruder, to come to Owensboro and sing at his wife's funeral. During the conversation he said: "My wife left your husband some money in her will." Teresa Lowry, a close friend of the testatrix, testified that H. H. Killinsworth came to her home early Tuesday morning and told her that his wife was dead. He told her that his wife had a will.

H. H. Killinsworth denied knowledge of the existence of the will. He testified that his wife kept her important papers in a metal box behind the piano; that on the day after the funeral he undertook to open the metal box in the presence of Montgomery Clemens and Frances D. Richards, his wife's sister. They could not find the key, and he then cut the box open but did not find the will. He denied stating to Ozetta Sleet that a will had been found, but admitted discussing the will with her. He admitted having a conversation with Mabel McGruder over the telephone, but denied that he said that Wilford McGruder had been left anything in the will. Frances D. Richards and Montgomery Clemens corroborated Killinsworth in regard to opening the metal box and finding no will. Mary Humphrey of Louisville, Kentucky, testified that she was in Owensboro visiting her mother some time the latter part of September, 1943, and that she went to the Killinsworth home to collect $13 which Killinsworth owed her husband. He was not at home, but she saw and talked with his wife. She saw her take from a metal box behind the piano a paper which Vitula said was her will; that Vitula said she wished to make some changes in her will; and that she walked to the basement, opened the door of the furnace, and put the paper in it. Mrs. Louise G. Kirtley, a lawyer, testified that she had written a will for Vitula Killinsworth several years prior to her death; that in the latter part of September, 1943, in a conversation over the telephone, Vitula Killinsworth told her she wanted to make some changes in her will and made an appointment to come to Mrs. Kirtley's office. Prior to the appointed day she died.

The burden is on the proponent of an alleged lost will to overcome the presumption of its destruction by the testator with the intention to revoke it, arising from its absence on his death. A presumption arises that a will which was in the custody of a testator and which

cannot be found at his death was destroyed by him with the intention of revoking it, but the presumption is a rebuttable one and may be overcome by proof of the acts and declarations of the testator or by proof of his relations to the parties involved. Baltzell v. Ates, 181 Ky. 413, 205 S. W. 548; Ferguson v. Billups, 244 Ky. 85, 50 S. W. 2d 35; Rowland v. Holt, 253 Ky. 718, 70 S. W. 2d 5; Madden v. Sevier, 271 Ky. 688, 113 S. W. 2d 41. It has been said in numerous opinions of this court that the continued existence of the will unrevoked must be established by clear and convincing proof, but this does not mean uncontradicted proof. As said in Rowland v. Holt, supra (253 Ky. 718, 70 S. W. 2d 9): "Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent minded people." Cf. Glass v. Bryant, 302 Ky. 236, 194 S. W. 2d 390.

The facts in the Holt case were somewhat similar to the facts in the instant case, and, in holding that the evidence was sufficient to sustain the jury's finding that the alleged lost will had not been revoked, the court said: "Where no will is found, it will be presumed that there was no will, unless this presumption is overcome by sufficient proof. Proof of the execution of the will and continued statements of the testator up to within a few days of his death, that he had made such will, coupled with the further fact that an interested person had opportunity to destroy or otherwise conceal the will, was competent proof for the purpose of rebutting the presumption that there was no will."

We conclude that the evidence was sufficient to take the case to the jury on the question of revocation, and to sustain its verdict.

Appellants complain because the witnesses Ozetta Sleet and Roxie Roberts Deal were permitted to testify concerning conversations with Vitula Killinsworth, some of them shortly before her death, in which the will was discussed. The witnesses were beneficiaries under the will, and Hale v. Hale, 242 Ky. 810, 47 S. W. 2d 706, Pritchard v. Harvey, 272 Ky. 58, 113 S. W. 2d 865, and other cases are cited in support of the contention that

their testimony concerning statements made by the testatrix not in the presence of the appellants was incompetent. However, an examination of the record shows that only two objections were made to the testimony of Ozetta Sleet. An objection was made to a question because of its leading form, and the objection was sustained. The witness was asked, "How long before that had she been in your house?", and she answered, "About a week." An objection to the question and answer was overruled, but the witness had already testified in detail, without objection, to conversations with the testatrix concerning the will, and the ruling of the court could not have been prejudicial. Only one objection was made to the testimony of Roxie Roberts Deal, and this was to a question which was a repetition of a question that had been asked and answered without objection earlier in the examination of the witness.

Appellants also complain of the admission of the testimony of William L. Wilson concerning the statements of the testatrix, at the time the will was prepared, concerning her reasons for making the will. This evidence was competent to show the state of mind of the testatrix, and, coupled with her statements concerning the will up to a short time before her death, as tending to show the improbability of a revocation. Caudill v. Loar, 293 Ky. 223, 168 S. W. 2d 757; Combs v. Shields, 270 Ky. 232, 109 S. W. 2d 601.

It is argued that even though the evidence was sufficient to take the case to the jury, yet the verdict is palpably and flagrantly against the evidence and the judgment should be reversed and the appellants granted another trial. This practice was abolished with the decision in Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. 2d 877.

The instructions are criticized because, as appellants claim, they place the burden on them to show that the will had been destroyed for the purpose of revoking it. The instructions are exactly the same, except for names and dates, as the instructions approved in Ferguson v. Billups, 244 Ky. 85, 50 S. W. 2d 35, and found in Stanley on Instructions, section 754. They fairly presented the issues in the case.

The judgment is affirmed.