James C. THOMPSON, Individually and as Administrator of the Estate of Ashleen N. Thompson, Appellant,

v.

James Ross HARDY, Jr., Individually and as Executor of the Leisa M. Fisher Estate; and Sabrina Hardy, Appellees.

No. 1999-CA-001654-MR.

Court of Appeals of Kentucky.

Oct. 20, 2000.

Discretionary Review Denied May 16, 2001.

Frank Hampton Moore, Jr., Stefan Richard Hughes, Bowling Green, KY, for Appellant.

W. Currie Milliken, Bowling Green, KY, for Appellee.

Before COMBS, JOHNSON and KNOPF, Judges.

### OPINION

JOHNSON, Judge.

James C. Thompson, individually and as the administrator of the estate of Ashlee N. Thompson, appeals from the judgment of the Edmonson Circuit Court entered upon a jury verdict in a will contest case upholding the validity of the purported lost will of Leisa M. Fisher. Since we believe that there was insufficient evidence to support the jury's finding that the will was duly executed and attested as required by law, we hold that the trial court erred in failing to grant Thompson's motion for a directed verdict. Accordingly, we reverse and remand.

Thompson was formerly married to Fisher. The couple had one child, Ashlee, who was born in 1983. Thompson and Fisher were divorced in 1986, and the couple shared joint custody of Ashlee. On November 9, 1996, Fisher and Ashlee sustained fatal injuries when the automobile Fisher was driving collided with a vehicle operated by a person who was intoxicated and driving on the wrong side of the highway. Fisher died at the scene of the crash. Ashlee died a few hours later. Thompson was appointed as the adminis-trator of Ashlee's estate. Fisher's mother, Regina Hardy, and her brother, James Ross Hardy, Jr., (Ross), were appointed as co-administrator's of her estate.

On November 19, 1997, several months after the appointment of the co-administrators of Fisher's estate, Ross petitioned the court to probate a document purported to be a copy of Fisher's lost will. The type-written document, dated March 17, 1996, was apparently signed by Fisher, but it did not contain the attesting witnesses' signatures. The copy of the purported lost will reads as follows:

> I, Leisa M. Fisher do state that this is my last will and testament.
>
> It is my will that in the event of my death, my brother Ross Hardy Jr. be the administrator of my estate.
>
> I want Ross and Sabrina Hardy to become the legal guardians of Ashlee.
>
> All of my worldly goods and monies are to go [to] Ross and Sabrina Hardy.
>
> Social Security, V.A.Benefits and other benefits Ashlee may be entitled to also go to Ross and Sabrina Hardy for I know in my heart that they will do the right thing.
>
> I love my whole family with all my heart and soul, Especially MOMMA.
>
> Ashlee remember that your momma loves you with all her heart and soul. Be a good girl.
>
> Signed:x/*Leisa M. Fisher*
> Witness:_____
> Witness:_____

On January 23, 1998, the Edmonson District Court ordered that the will be admitted to probate as the last will of Fisher and that Ross be appointed as the executor of Fisher's estate. Thompson filed an action in the Edmonson Circuit Court disputing the validity of the will and seeking a declaration that it was invalid under the

provisions of KRS[1] 394.040. Ross and his wife, Sabrina Hardy, answered the complaint and filed a counterclaim against Thompson on behalf of Fisher's estate for back child support.

Thompson moved for summary judgment alleging that there was no proof that the ·purported will had been executed as required by KRS 394.040. In its order of January 19, 1999, the trial court denied the motion since discovery had not yet been undertaken. Thompson renewed his motion for summary judgment two months prior to the scheduled trial date and after answers to interrogatories propounded to the appellees indicated that the identity of the attesting witnesses remained unknown. Thompson again pointed to the absence of any evidence on the issue of the will's execution in the manner prescribed by statute and the inability of the Hardys to produce such evidence at trial. The renewed motion was apparently denied on the morning of trial.

When the case was tried before a jury in June 1999, the Hardys called several witnesses who testified that they had seen Fisher's will and that the copy offered for probate was identical to the will they had seen with the exception that the original will contained two signatures on the lines provided for the attesting witnesses. Although the many trial witnesses, all family members or close friends, testified that Fisher's will had contained the signatures of two witnesses, and although many of these trial witnesses could identify the contents of the copy as being the same as the will they had seen, none could recall the names of either of the alleged attesting witnesses. Furthermore, there was no witness who testified that he had seen Fisher or the attesting witnesses sign the will, much less execute it in the presence of each other.

Despite these evidentiary gaps, the trial court denied Thompson's motions for a directed verdict and allowed the jury to determine whether the will was "[d]uly executed," defined in the trial court's instruction as one having been "signed by [Fisher] and [ ] attested by two or more competent witnesses subscribing their name[s] in her presence." A unanimous jury determined that the will had been duly executed. Although the jury had heard proof on the counterclaim for child support, that claim was bifurcated from the issue of the validity of the lost will. A final and appealable judgment was entered on June 14, 1999, in which the trial court ruled that the document offered for probate was the last will and testament of Fisher and that the will should be admitted to probate and "have full force and effect under the laws of the Commonwealth of Kentucky." This appeal followed.

■ Thompson continues to argue that the document offered for probate is invalid as it fails to meet the statutory requisites prescribed in KRS 394.040, which reads as follows:

No will is valid unless it is in writing with the name of the testator subscribed thereto by himself, or by some other person in his presence and by his direction. If the will is not wholly written by the testator, the subscription shall be made or the will acknowledged by him in the presence of at least two (2) credible witnesses, who shall subscribe the will with their names in the presence of the testator, and in the presence of each other.

Thompson insists that the trial court erred in allowing the jury to render a verdict in the absence of any proof to satisfy the

---

1. Kentucky Revised Statutes.

formalities required by this statute. We agree.

Our standard of review of a trial court's denial of a motion for a directed verdict is set forth in *Lewis v. Bledsoe Surface Mining Co.*,[2] as follows:

> Upon review of the evidence supporting a judgment entered upon a jury verdict, the role of an appellate court is limited to determining whether the trial court erred in failing to grant the motion for directed verdict. All evidence which favors the prevailing party must be taken as true and the reviewing court is not at liberty to determine credibility or the weight which should be given to the evidence, these being functions reserved to the trier of fact. The prevailing party is entitled to all reasonable inferences which may be drawn from the evidence. Upon completion of such an evidentiary review, the appellate court must determine whether the verdict rendered is "'palpably or flagrantly' against the evidence so as 'to indicate that it was reached as a result of passion or prejudice.'" If the reviewing court concludes that such is the case, it is at liberty to reverse the judgment on the grounds that the trial court erred in failing to sustain the motion for directed verdict. Otherwise, the judgment must be affirmed [citations omitted].

■ In addition, we are guided in our review by settled principles concerning wills and the formalities attendant to their execution. "It is elementary that the power to dispose of one's property by will and the manner in which a will may be executed are statutory."[3] "The making of a will is not a natural right, but is a statutory privilege conferred by legislative grant."[4] "The law governing the execution and revocation of wills in Kentucky is fully and minutely set forth in the statutes, and to be effectual the execution ... of a will must substantially conform to the provision of the statute."[5] Clearly, the Legislature has the right "to impose and has imposed upon the makers of wills" certain technicalities which must be observed in order for a will to be valid.[6]

■■ The proof necessary to establish the validity of a lost will is no less stringent than that required if the will had not been lost.[7] There is no question that the Hardys, as the proponents of the lost will, had the burden to prove "by clear, satisfactory and convincing testimony (1) the due execution of the instrument; (2) its contents; (3) that it has been lost and cannot be found; and (4) the continued existence of the will unrevoked by the testator."[8] The substance of the evidence at trial is being questioned only on the issue of the due execution of the will.

■ The Hardys insist that it was proper for the trial court to allow the jury to infer from the testimony of witnesses

2. Ky., 798 S.W.2d 459, 461–462 (1990); *see also Taylor v. Kennedy*, Ky.App., 700 S.W.2d 415, 416 (1985).

3. *Miller's Ex'r v. Shannon*, Ky., 299 S.W.2d 103, 105 (1957) (unsigned holographic will placed in sealed envelope that contained the signature of the testatrix held not to comply with the statutory requirement that the will be signed at the "end or close of the writing").

4. *Nelson v. Nelson*, 235 Ky. 189, 30 S.W.2d 893, 894 (1930).

5. *Miller v. Harrell*, 175 Ky. 578, 194 S.W. 782, 783 (1917).

6. *Miller's Ex'r, supra.*

7. *White v. Brennan's Adm'r*, 307 Ky. 776, 778, 212 S.W.2d 299, 302 (1948).

8. *Clemens v. Richards*, 304 Ky. 154, 155, 200 S.W.2d 156, 157 (1947).

who stated that they observed signatures on the lines reserved for the attesting witnesses that the formalities of the statute had been satisfied. However, the Hardys have not cited a single case from this, or any other, jurisdiction that suggests that it is reasonable to allow a jury to infer compliance with formal, technical, statutory requirements merely by observation of a signature.[9] The Hardys also contend, again without reference to any legal authority, that the jury's unanimous verdict establishes "the fact that the evidence was clear and convincing." Obviously, unanimity of the jury's verdict does not resolve the issue of the sufficiency of the evidence to support the verdict.[10]

■ Generally, proof of due execution of a will is provided by one, or both, of the subscribing, or attesting, witnesses.[11] That is, after all, the purpose for having attesting witnesses in the first instance.[12] However, persons who were present during the executing of a will, but who did not serve as attesting witnesses, may offer sufficient evidence to establish due execution.[13] In *White*, due execution was convincingly established by the attorney who had retained a carbon copy of the testator's will which had been lost. He testified that he had prepared the will, that he was familiar with the requirements for a valid will, that he remembered the execution ceremony of the particular will in question, and that he had observed the signing of the will by the two witnesses. However, *White* does not hold that due execution can be established without the testimony of at least one person, either an attesting witness or person who witnessed the formal will-signing ceremony contemplated by the statute.

■ In the case *sub judice*, it is apparent that the will was not prepared by an attorney, but was probably prepared by Fisher herself. From the lines prepared for the signature of two witnesses, the jury could reasonably infer that Fisher was aware of the need to obtain such signatures. There was evidence that the documents contained Fisher's signature and the signatures of two other persons. However, there was no attestation clause or any other proof that Fisher was aware of the manner in which KRS 394.040 mandates those signatures be obtained.[14] Further, there is a complete absence of proof

---

9. Further, their reliance on KRS 394.235 is misplaced as that statute, which provides an alternate method for proving a will when the subscribing witnesses are "unavailable," clearly contemplates the existence of a will that is valid on its face, that is attested to by two witnesses whose names and identities are ascertainable. The statute has no application to the situation in the case *sub judice* where the only reason the witnesses are unavailable is because they are unknown to the proponents of the will.

10. The fact that the jury rendered a unanimous verdict could just as easily reflect the degree of sympathy the Hardys' counsel was able to engender for Fisher's family and the prejudice created against Thompson. For example, the trial court allowed the Hardys, over Thompson's objection, to question Thompson about his 1989 indictment for flagrant nonsupport and his failure to keep current on his support obligations.

11. See KRS 394.210(3) and *Shoup v. Ketron*, Ky., 528 S.W.2d 731 (1975); *see also Birch v. Jefferson County Court*, 244 Ky. 425, 426, 51 S.W.2d 258, 259–60 (1932). Of course, KRS 394.225 allows for a self-proved will, but that is not involved here.

12. See *Bennett v. Craycraft*, Ky., 290 S.W.2d 615 (1956).

13. *White, supra.*

14. Unfortunately, this case is a reminder of the need and importance of having a will properly prepared to insure that the estate will be probated in accordance with the wishes of the decedent.

on the critical issues of whether Fisher acknowledged the document to the unknown witnesses as her will, or whether the attesting witnesses signed the document in Fisher's presence or in the presence of each other, or even whether the unknown witnesses were competent. Without testimony that these formalities were followed, formalities designed to prevent fraud on the estate of the deceased, the jury could only have found that the will was duly executed by resorting to speculation and conjecture. Under the circumstances of this case, it is certainly understandable that a jury would favor the Hardys' position. However, it is the duty of the trial court, as the gatekeeper, to follow the requirements of the law and to enter a directed verdict when required. We certainly take no pleasure in reversing this judgment, but our role, our purpose as the appellate court requires no less.

Accordingly, the judgment of the Edmonson Circuit Court is reversed and the matter is remanded for entry of a judgment consistent with this Opinion.

ALL CONCUR.