## Rowland et al. v. Holt.

(Decided Jan. 30, 1934.)

(As Modified on Denial of Rehearing April 24, 1934.)

WHEELER, WHEELER & SHELBOURNE for appellants.

M. C. ANDERSON and R. O. WILLINGHAM for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

R. W. Rowland, a resident of Carlisle county, Ky., died on January 20, 1932, at the age of 68 years. His wife died several years before he died. He left no chil-

dren. He was survived by three brothers, a sister, and children of a sister who had predeceased him. Otto Holt, appellee herein, was a nephew of decedent's wife, and decedent and his wife took Otto into their home when he was four or five years of age and raised him to manhood. After his marriage he moved to Detroit, Mich., where he had been living some time prior to and at the time of the death of decedent. Within a few days after the death of decedent, Otto Holt, the appellee herein, filed in the Carlisle county court his petition and notification alleging that R. W. Rowland died testate naming Otto Holt in his last will as the sole beneficiary of his estate. Being unable to find any will, appellee filed an amended petition in which he alleged that the will of R. W. Rowland was lost or destroyed, and that he would introduce proof to establish the lost instrument. Appellants filed their answer denying that decedent left a last will and last testament, but alleged that he died intestate, and that his brothers and sister and the children of the deceased sister were entitled to his estate under the statutes of descent and distribution (Ky. Stats. sec. 1393 et seq.). Appellants, defendants below, offered no proof in the county court, and, at the conclusion of the evidence of appellee, an order was entered by the county court adjudging that decedent died testate leaving a will which was duly and regularly executed in the year 1931, and further found and adjudged that the will was lost or could not be produced, filed, and recorded; and further adjudging that Otto Holt was the sole beneficiary named in the will and was entitled to all the property of decedent after the payment of his debts.

An appeal to the Carlisle circuit court was prosecuted by appellants which was tried before a jury at the June term, 1932, and the jury returned its verdict finding that there was a will and that the paper offered as a substitute for the will to be the last will of decedent. Judgment was rendered upon this verdict in substance the same as that in the county court. A motion and grounds for a new trial were overruled. Hence this appeal.

A number of alleged errors were assigned in the motion and grounds for a new trial, but in appellant's brief it is only urged that the court erred in giving certain instructions offered by appellants; that the verdict of the jury is contrary to the law and contrary to the

instructions given by the court; and that the verdict is flagrantly against the weight of the evidence.

To establish a lost will three essential requirements are necessary. (1) Proof of due execution of the will; (2) contents of the will; and (3) continued existence of the will unrevoked by the testator. We will address ourselves to items (1) and (2) jointly because they are sought to be established principally by the same evidence. It is apparent from the record that the testator made two wills, the first of which having been witnessed by L. B. Jones in the presence of testator and R. O. Willingham; and the second one witnessed by C. H. Chumley and R. O. Willingham. L. B. Jones testified that, some time within the year 1931, R. W. Rowland, the decedent, called on him to sign a paper as a witness to his will, and that he signed the will as witness in Willingham's office; that Otto Holt was named in the will as the sole beneficiary; that some time thereafter the decedent told him that he had destroyed that will. It is testified by a number of other witnesses that decedent made the statement that his brothers got mad because he made the will and he got mad and tore up the will in their presence. In this he is corroborated by his brothers. Thus it is satisfactorily shown that the will witnessed by L. B. Jones and Willingham was destroyed. Then the question to be determined is whether or not decedent executed a later will. It is insisted for appellee that he executed a second will sought to be established herein, which was witnessed by C. H. Chumley and R. O. Willingham. C. H. Chumley testified that, some time in the summer of the year 1931, the decedent came to him on the street in Bardwell, Ky., and asked him to witness a paper for him which he stated to be his will, and that he went with decedent to the office of R. O. Willingham, and, while going up the steps, he (decedent) said that the boys (meaning his brothers) got mad at him because he made a will to Otto; that they wanted to sell him the Jim Harper farm, and that he was going to let them have the farm, but he was going to make another will; and further said:

"I shouldn't have done it, but I got mad and went out there and tore it up [meaning the will] in front of Joe and Simon's face [meaning Joe Rowland and Simon Rowland, decedent's brothers] and I want to make another will and want you to sign it."

When they got into Willingham's office decedent pro-

duced the will which the witness read, and Otto Holt only was named beneficiary of the will; that the testator signed the will in the presence of the witness Chumley, and also in the presence of R. O. Willingham, the other attesting witness, and that he and Willingham both attested the will in the presence of each other and in the presence of the decedent, testator; that after the will was signed Willingham reached it to the testator, and that he had not seen the will since that time. R. O. Willingham stated that he wrote a will for the decedent in which Otto Holt was named the sole beneficiary of decedent's estate, and that this will was prepared and witnessed by him in the spring or summer of 1931. However, he further stated that he did not remember preparing or witnessing but one will for decedent, but stated that Chumley and Jones both witnessed a will of decedent in his office, and that the will that Chumley witnessed first directed that his just debts, if any, be paid, and then the residue of his property go to Otto Holt; that this will was signed by decedent in his presence and in the presence of the other attesting witness, Chumley, and attested by both of them in the presence of decedent, testator, and the will then turned over to decedent; that he had not seen the will since that time; that this occurred on a drizzly, wet day. Ed Yates, circuit court clerk for Carlisle county, stated that, some time in the summer or fall of 1931, decedent was talking to him about "Cy" (meaning Otto) and said to him, " 'Ed, I have just made a will just like the other one,' and I said 'That means all your debts to be paid and the rest go to "Cy" or Otto,' and he said 'Yes, that is the way it is.' " This, he stated, was on a drizzly, wet day. The witness further stated that decedent had talked to him about the contents of the other will and said that the boys were mad and he went up there and took the will and tore it up in their faces.

On the other hand, in contradiction to the evidence of the proponents of the will, we have the evidence of S. I. Rowland and J. N. Rowland (who are also referred to in the record as Simon and Joe Rowland, brothers of decedent) and Martha McGary, a sister; all testified that in November, 1931, just prior to the death of decedent the following January, decedent tore up and destroyed the first will referred to, to which the names of L. B. Jones and W. H. Chumley appeared as witnesses and decedent said, "Boys, I have destroyed my will and

there will be no more wills.'' Mrs. McGary, sister of decedent, testified that she had a conversation with decedent on January 3, just preceding his death on January 19, and she asked him if he had made a will, and he said he had not since the one he tore up, and that he would never make another one.

A will may be admitted to probate upon the testimony of either one of the subscribing witnesses who also proves the attestation by the other. Doyle v. Brady, 170 Ky. 316, 185 S. W. 1133. And the due execution of a will may be proven by one of the attesting witnesses if he can testify to compliance with all the requirements of the statutes. One of the subscribing witnesses may prove the execution of a will and its due attestation by himself and others, and, if his testimony is satisfactory, it is sufficient. Tackett v. Tackett, 204 Ky. 831, 265 S. W. 336. And one of the witnesses may prove the attestation, acknowledgment, and signature, and thus probate the will. Tackett v. Tackett, supra. Where a subscribing witness to a will does not recollect that he subscribed in the presence of the testator, that fact may be proved by other witnesses. Gwinn v. Radford, 12 Ky. (2 Litt.) 137. The witness Willingham stated that he did not remember definitely of having witnessed but the one will of decedent, but the witness Chumley testified positively that Willingham did attest the same will which he attested, and this was after decedent had told Chumley that he had torn up the former will and was making this will in its stead. Then by analogy of reason, in light of the rule above quoted in Gwinn v. Radford, supra, the attestation of Willingham could be proven by the testimony of Chumley. It is true that part of the statements of decedent respecting his desires and intention to leave his property to appellee were made some time previous to his death. In Ellis v. Ellis, (Ky.) 128 S. W. 1057, 1059, it is said:

"The greater the length of time elapsing between the making of the declaration and the making of the will, the more the evidence would tend to establish the testator's fixedness of purpose."

There is considerable evidence, and it is not very strongly contradicted, that decedent expressed his desires and intentions to leave his property to appellee, and that he had willed same to him, up to within a few weeks, and, in some instances, a few days, prior to his death. These statements are competent in corrobora-

tion of other evidence of the main fact to which the declarations are addressed. Wood v. Wood et al., 241 Ky. 506, 44 S. W. (2d) 539, and cases therein cited.

We now address ourselves to a consideration of the third proposition, viz.: The continued existence of the will unrevoked by the testator. It is shown by the witnesses Chumley and Willingham that, after the will was properly signed and witnessed as stated by them, it was delivered to the testator. It is shown by uncontradicted evidence that decedent kept his papers in a wood box approximately a foot square, and within the wood box was a small metal box in which he kept his valuable papers, both boxes being equipped with lock and key. It was his custom to keep the wood box locked and very zealously guarded his papers. He had served a term as sheriff of Carlisle county and perhaps in other official capacities, and had many important papers such as paid vouchers and receipts, etc., relating to his official records as sheriff and other official transactions. According to the evidence of Mrs. Riggs, at whose home decedent had lived for some time, he had repeatedly warned her that, if anything happened to her house, to get his box out, as it contained all his valuable papers. It is shown by the evidence of B. P. Peek that decedent had stated to him that "every paper that I ever had is in that box." It is shown by another witness that, about Christmas before decedent died, he stated that the boy (meaning Otto) would receive what he had when he died; and by another witness that, within about two weeks before his death, decedent stated to J. E. Martin that the undertaker and "Cy" (meaning Otto Holt) would get all that he had; and further told the witness Mrs. Witty, in the fall of 1931, which was after the alleged date of the execution of the last will, that Otto would receive all of his property at his death. A. T. Hobbs, who was county judge at the time decedent was sheriff, testified that decedent stated to him three or four months before he died that he expected Otto to get everything he had when he died. T. B. Sanford stated that in October, 1931, decedent told him that he wanted all of his property to go to Otto, and that he did not want to sell the timber on the land which he had heired from his uncle Jim Harper, that it might be of some good to Otto. Bob Kelly and N. B. Holt testified that decedent told them that he meant for Otto to have everything he had after his death. Holt gives the time of

this statement in October, 1931, and the statement to Kelly was made about Christmas before decedent died in January following. J. T. Tucker testified that decedent told him he thought as much of Otto as if he were his own child, and that he was going to leave his property to "Cy" (meaning Otto). Edith Willy testified that, in November prior to the death of decedent in January, he told her that he had torn up the old will and made a new one, and all he had was going to Otto. J. D. Ellis testified that either in late December, 1931, or the first of January, 1932, decedent, in a conversation with him, expressed his warm feeling toward Otto, using this language:

> " 'I raised a boy and I don't think a man can think more of his own child than I think of the boy I raised. * * *' And he just popped up his hand and sorta jerked me around and said, 'I think this much of him, if he is here when I leave and my expenses are paid everything left is his.' "

Marvin Hobbs testified that a couple of weeks or 10 days before decedent's death he heard him say that "Cy" was going to get everything anyway.

Respecting the small metal box in which decedent kept his valuable papers, the evidence is somewhat conflicting. Mrs. Riggs testified that decedent told her that when he went to Detroit in November, 1930, he left his metal box in the circuit clerk's office and after he came back he was unable to find it. She further testified that she saw the inside of the wood box, but did not see the small metal box; that decedent got his papers mixed up and called on her for a string to tie up the papers and she helped him straighten up his papers and tie them up, but that she saw no will or any paper resembling a will. She further stated that he had a little pasteboard box in which he said he had "Uncle Jim's papers." But in opposition to this testimony, T. B. Sanford testified that he saw the metal box in September or October, 1931. J. T. Denton saw the box as late as 10 days before decedent became ill. Bob Kelly saw the same box three weeks before decedent died. J. C. Mason saw the box in the Riggs home in the fall just preceding decedent's death. B. P. Peek saw Rowland go through his papers and saw the metal box and saw decedent put it in the wood box after he had placed some papers in the wooden box, within four or five weeks before his death. It is true, however, that

no witness testified that they ever saw the will after its alleged execution and delivery to the testator, in Willingham's office.

Decedent was buried in the late afternoon, the day following his death. It is shown by Mrs. Riggs and also by S. I. Rowland, brother of the decedent, that in the late afternoon the day decedent was buried Mrs. Riggs told S. I. Rowland that decedent had often cautioned her to take care of his box in the event of fire or anything should happen to the house, because his valuable papers were in the box, and that she did not want to take the responsibility of keeping his papers, and asked S. I. Rowland to take the box, and he took the box and the keys thereto to his home, and kept them over night. On the next morning Mrs. Riggs went to the county judge's office and reported to him that S. I. Rowland had taken this box which contained decedent's papers, and the county judge immediately ordered him to bring the box to him (the county judge). S. I. Rowland said he kept the box in his home on that night; but he said he did not unlock the box; that he supposed it was locked, and that he had a bunch of keys that Mrs. Riggs gave him and he put them in his pocket and did not look at them until he gave them to the county judge. He said he saw no will and took nothing out of the box. Counsel for appellee very studiously avoids accusing S. I. Rowland of purloining the box and taking therefrom his deceased brother's will. But the fact is stressed that he (S. I. Rowland) was interested in his brother's estate of which he would be a beneficiary in the event his brother died intestate, and took this box and decedent's bunch of keys, which presumably contained the keys to the box, and thereby had an opportunity to get the will and conceal it. Where no will is found, it will be presumed there was no will, unless this presumption is overcome by sufficient proof. Proof of the execution of the will and continued statements of the testator up to within a few days of his death, that he had made such a will, coupled with the further fact that an interested person had opportunity to destroy or otherwise conceal the will, was competent proof for the purpose of rebutting the presumption that there was no will. Wood v. Wood, 241 Ky. 506, 44 S. W. (2d) 539. It is insisted for appellants that to establish a lost will it is essential for the proponents to prove, by clear evidence, the due execution, the loss, the contents, and the continued

recognition of the will unrevoked. In support of this contention are cited Chilton's Adm'r v. Shelley, 243 Ky. 576, 49 S. W. (2d) 305, and other cases of similar holdings which tend to support appellant's contention. However, there is cited for appellee the case of Hoffman's Adm'r v. Hoffman, 223 Ky. 705, 4 S. W. (2d) 694, 695, involving the proof of a lost will wherein it is said: "Under section 4850, Kentucky Statutes, the verdict of a jury in a will case is given the same effect as the verdict of a jury in other civil cases," and that "the verdict of the jury will not be disturbed, unless it is palpably against the evidence." See, also, Broaddus' Devisees v. Broaddus' Heirs, 10 Bush, 299; Bush v. Lisle, 89 Ky. 393, 12 S. W. 762, 11 Ky. Law Rep. 709; Williams' Ex'r v. Williams, 90 Ky. 28, 13 S. W. 250, 11 Ky. Law Rep. 828.

However, conceding that proof to establish a lost will should be of a higher degree than that required in other civil cases, we are unable to say that the evidence disclosed by this record, viewed in the light of the attendant circumstances, does not measure up to the standard required. Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent minded people.

On the whole case we are constrained to the conclusion that the evidence is sufficient on all phases of the case to sustain the verdict of the jury.

It is next insisted that the instruction given the jury by the court is erroneous. The instruction given is as follows:

"If the jury believe from the evidence that the paper offered for probate is, in substance, a true copy of a will signed or acknowledged by R. W. Rowland in 1931 in the presence of W. H. Chumley and R. O. Willingham and that same was also signed by said W. H. Chumley and R. O. Willingham as witnesses in the presence of said R. W. Rowland, and if they further believe from the evidence that said will was not thereafter destroyed by said R. W. Rowland with the intention of revoking same, then they will find the said paper to be the last will of said R. W. Rowland; and unless they so believe they will find said paper not to be the last will of said R. W. Rowland."

While this instruction is not perfect or as apt as it might have been, on the whole it fairly presented the issues to the jury and the law pertaining thereto. We do not think that the jury could be misled by this instruction.

The complaint directed to the instruction given is that it did not require the jury to believe that the witnesses attested the will in the presence of each other. The correctness of an instruction, as a general rule, depends upon the issues and the evidence in the case. An instruction which may be correct under one state of facts may be incorrect under a different state of facts. This rule is too well established to require citation of authority. In the instant case there is no evidence conducing to show that the attesting witnesses did not attest the will in the presence of each other. On the other hand, it is clearly shown by the witness Chumley that he and Willingham signed the will as attesting witnesses in the presence of each other, and in this he is corroborated by Willingham. The other complaint is that the instructions given failed to explain to the jury the meaning of intention to revoke, and left the jury to draw its own conclusions as to the meaning of the words, "That said will was not thereafter destroyed by said R. W. Rowland with the intention of revoking same." An explanation by the court as to what constituted a revocation would not have been improper, but we do not think that the failure to make such explanation was prejudicial under the evidence in this case.

Perceiving no error prejudicial to the substantial rights of appellants, the judgment is affirmed.

The whole court sitting.