RENDERED: DECEMBER 17, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0783-MR

GLEASON F. HUMPHREY                           APPELLANT


APPEAL FROM CLARK CIRCUIT COURT
v.            HONORABLE KIMBERLY BLAIR WALSON, JUDGE
ACTION NO. 13-CI-00557


CAROLYN ANN HUMPHREY (now BLAND)           APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND JONES, JUDGES.

CETRULO, JUDGE: Gleason F. Humphrey ("Gleason") appeals from the findings of fact, conclusions of law, and judgment entered by the Clark Circuit Court on May 11, 2020. Following review of the record, briefs, and law, we affirm.

# I.     MOTION TO STRIKE

On appeal, our review is confined to matters properly made a part of the record. *Fortney v. Elliott's Administrator*, 273 S.W.2d 51, 52 (Ky. 1954); *Rohleder v. French*, 675 S.W.2d 8, 9-10 (Ky. App. 1984). Appellee, Carolyn Ann Humphrey ("Carolyn"), filed a motion to strike Gleason's brief and dismiss the appeal pursuant to Kentucky Rule of Civil Procedure (CR) 76.12(8)(a).[1]

Many elements of Gleason's brief and appendix contain documents that are not part of the record, and therefore, not properly before this Court. Because those documents are not properly before this Court, we have not considered them in reaching our decision on the merits. Additionally, Gleason's brief is replete with reference flaws and preservation deficiencies with respect to the requirements of CR 76.12 and CR 75.01. Despite these errors, we choose not to strike the brief in its entirety because we can easily dispose of the issues presented in this appeal. We deny the motion to strike in a separate order.

## II.     FACTS AND PROCEDURAL BACKGROUND

Gleason and Carolyn were married in May 1995. They remained married for 20 years, until the decree of dissolution was entered in November 2015. The circuit court divided the marital property and nonmarital property

---

[1] CR 76.12(8)(a) provides that a brief may be stricken for failure to comply with any substantial requirement of this Rule.

including the marital residence (and relevant equity), automobiles, car trailer, and household goods.  Gleason appealed, challenging the division of assets.  In May 2018, another panel of this Court entered an Opinion remanding, with limited instructions, to clarify the calculations used to divide equity in the marital residence and provide additional findings of fact relating to two automobiles (a 1958 Corvette and a 1930 Ford Coupe) and a car trailer.  *See Humphrey v. Humphrey*, No. 2015-CA-001484-MR, 2018 WL 2181313 (Ky. App. May 11, 2018).

On remand, the Clark Circuit Court entered its findings of fact, conclusions of law, and judgment in May 2020.  The court ruled that Gleason had not met his burden of proof, by clear and convincing evidence, that various assets were nonmarital property.  Specifically, the court found the black car trailer, the 1958 Chevrolet Corvette ("Corvette"), and the 1930 Ford Coupe ("Coupe") *were* marital property; and the court clarified the calculations used to determine the percentage of the marital and nonmarital equity in the marital residence.  Gleason appealed.

## III.   STANDARD OF REVIEW

When property distribution is at issue in a dissolution proceeding, the trial court must undertake three steps:  (1) categorize each piece of disputed property as marital or nonmarital; (2) assign each party's nonmarital property to

that party; and (3) equitably divide the parties' marital property in just proportions. *Roper v. Roper*, 594 S.W.3d 211, 225 (Ky. App. 2019), *as modified* (Jan. 17, 2020) (citing *Smith v. Smith*, 235 S.W.3d 1, 5 (Ky. App. 2006)). The trial court's assessment of whether an item is marital or nonmarital is reviewed under a two-tiered scrutiny in which the factual findings made by the court are considered under the clearly erroneous standard and the ultimate legal conclusion denominating the item as marital or nonmarital is reviewed *de novo*. *Smith*, 235 S.W.3d at 6.

## IV. ANALYSIS

Kentucky Revised Statute (KRS) 403.190(3) states:

All property acquired by either spouse after the marriage and before a decree of legal separation is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (2) of this section.

To overcome that presumption, Gleason must prove each item of property is nonmarital through *clear and convincing evidence*. *Barber v. Bradley*, 505 S.W.3d 749, 755 (Ky. 2016). *See also Brosick v. Brosick*, 974 S.W.2d 498, 502 (Ky. App. 1998). "Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is a proof of a probative and

-4-

substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people." *Barber*, 505 S.W.3d at 755 (quoting *Rowland v. Holt*, 253 Ky. 718, 70 S.W.2d 5, 9 (1934)).

Despite this presumption, Gleason contends the circuit court erred when it found the Corvette, Coupe, and black car trailer were marital property. He also contends the marital residence equity distribution was calculated inaccurately. We will discuss each of the four disputed property assets in turn with this burden in mind.

### A. Corvette

Gleason admits the Corvette was purchased during the marriage but argues he can overcome the statutory presumption that it is marital property. KRS 403.190(2) states, in pertinent part, marital property is "all property acquired by either spouse subsequent to the marriage *except* . . . [p]roperty acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent." KRS 403.190(2)(b) (emphasis added). Gleason argues he can trace the funds used to purchase the Corvette to such a bequest.

Gleason argues that in April 2007, his mother gifted him a deed to a parcel of real property; Gleason then sold that property in June 2009. Gleason argues he used the funds of that sale to purchase the Corvette, and therefore the

vehicle should be classified as nonmarital property. In contrast, Carolyn argues Gleason "failed to show in any regard how such property was received from his mother, how the resulting funds were kept, or how such funds were used."

In the circuit court's 2020 order, the court pointed out that Gleason gave deposition testimony stating he could not remember if the money from the sale of his mother's house was used to purchase the Corvette. The court notes Gleason had no documentary evidence to show: (a) the real property was given to him alone, (b) where the net proceeds from the sale were deposited, (c) if the sale proceeds were comingled with marital property, (d) or any proof to trace the proceeds to the purchase of the Corvette. Because the burden was on Gleason to prove the Corvette was nonmarital property by clear and convincing evidence, the circuit court found the Corvette was marital property. We find no error in the court's findings, and the conclusions are reasonable.

## B. Coupe

Gleason admits the Coupe was purchased for $2,500 during the course of the marriage. To overcome the statutory presumption that the Coupe was marital property, Gleason attempts to trace the *restoration* of the Coupe to assets owned prior to the marriage. Prior to the marriage, Gleason owned a 1934 Dodge Pickup Truck. Over the course of 20 years, Gleason traded the 1934 Dodge Pickup Truck for various other vehicles. He claims each was an even trade. The last

vehicle acquired in the trade was then traded for the *restoration* on the Coupe, not the Coupe itself.

Carolyn argues Gleason has "provided absolutely no evidence, by testimony or documentation, to establish the value of the work performed, the date the work was performed, or even the name of the individual who performed the [restoration] work." The circuit court stated Gleason "equates his convoluted attempt at tracing all these trades which may have ultimately resulted in repairs to a marital vehicle to having 'traced' the series of trades into the purchase of the 1930 Coupe which he conceded was *purchased* during the marriage, not acquired through trades." (Emphasis original.) The court aptly cited to *Kleet v. Kleet*, "[a] claimant cannot meet the tracing requirement simply by showing that he or she brought nonmarital property into the marriage without also showing that he or she has spent his or her nonmarital assets in a traceable manner during the marriage." 264 S.W.3d 610, 614-15 (Ky. App. 2007) (citing *Polley v. Allen*, 132 S.W.3d 223, 229 (Ky. App. 2004)). The court found Gleason did not sufficiently trace the assets in question nor did he meet his burden of proof, and therefore the Coupe is marital property. We find no error in the court's findings, and the conclusions are reasonable.

## C. Black Car Trailer

Again, Gleason admits the black car trailer was acquired during the course of the marriage. He states the black car trailer was acquired in trade for a red car trailer that he purchased before the marriage. As proof of the original purchase of the red car trailer, Gleason submitted a bill of sale dated in 1994.

Carolyn points to Gleason's own deposition testimony that states he sold the red car trailer for $2000 one year before the marriage, and later (during the marriage) used those funds to buy the black car trailer. Carolyn also discredits the bill of sale because (1) it lacked a witness, (2) it used a font not created until 2004, ten years after the purported bill of sale was allegedly executed, and (3) it was not produced until "well into the discovery phase."[2] Gleason presented no proof of the trade nor any additional tracing information regarding the matter. Because Gleason did not meet his burden of proof, the court found that the black car trailer was marital property. We find no error in the court's findings, and the conclusions are reasonable.

## D. Marital Residence

The marital residence on Mahan Drive (the "Mahan Property") was purchased during the marriage and presumed to be marital property. On the first

---

[2] Now on appeal, Gleason newly asserts it was a replacement bill of sale.

appeal, this Court remanded with instructions to clarify the calculation of nonmarital and marital interest in the Mahan Property.

Prior to the marriage, Gleason owned a home on Becknerville Road (the "Becknerville Property") but provided no documentary evidence to establish the amount of equity he had in the property at the time of the marriage, the fair market value at the time of the marriage, nor proof (photographic or otherwise) he placed a mobile home on the property prior to the marriage.

After the marriage, the parties purchased the Mahan Property with a bridge loan on both the Mahan and Becknerville Properties. Thereafter, the couple sold the Becknerville Property. As the circuit court points out, there were 274 months between Gleason's purchase of the Becknerville Property and its sale; 226 months' worth of payments were made on the Becknerville Property by the time the bridge loan was executed by the parties; 144 months' worth of those payments were made during the marriage.[3] After the Becknerville Property sale, the couple applied the proceeds to the bridge loan and simultaneously executed a loan on the Mahan Property.

The court found Gleason failed to establish the equity he had in the Becknerville Property. Fair market value is not equity. He originally testified he

---

[3] Gleason alone made 82 of 226 payments equaling 36% **nonmarital** interest in the Becknerville property; the couple made 144 of the 226 payments equaling 64% **marital** interest in the property when it was sold.

financed some of the purchase price but presented arguments on February 5, 2020 "that completely contradicted his own testimony." Then, Gleason claimed he did not finance the property but purchased it with cash. The court stated Gleason "failed to provide any support whatsoever to establish definitively the amount of equity he had in the Becknerville [P]roperty when purchased." Relying on *McVicker*, the court determined that without documentary evidence or even consistent testimony, the court must determine Gleason had financed the entire purchase. *McVicker v. McVicker*, 461 S.W.3d 404 (Ky. App. 2015) (holding the husband's testimony alone was insufficient to meet his burden of proof that he had a nonmarital interest in the marital residence).

Both parties agreed that the *Brandenburg* formula should be utilized to determine the nonmarital and marital equity in the Becknerville Property. *Brandenburg v. Brandenburg*, 617 S.W.2d 871, 872-73 (Ky. App. 1981). "In essence, the formula requires the trial court to calculate the respective percentages of marital and non-marital contributions in relation to the total contribution to the property. Each percentage is then multiplied by the equity in the property to apportion the property between the parties." *Atkisson v. Atkisson*, 298 S.W.3d 858, 862 (Ky. App. 2009).

It is clear that the trial court did utilize that formula and conducted the calculations based upon consideration of a series of loans and mortgage payoffs.

Relying on that documentary proof (loans and payoffs), the court determined the total equity in the marital residence was $125,000.00.  Of that, the nonmarital interest was $39,509.46 for Gleason alone and the marital interest was $85,490.54, to be shared equally.[4]  We find no error in the court's findings; and, the distribution is reasonable, fair, and supported by sound legal principles.

## V.    CONCLUSION

For the foregoing reasons, the findings of fact, conclusions of law, and judgment of the Clark Circuit Court is AFFIRMED.


ALL CONCUR.


BRIEF FOR APPELLANT:

Brian N. Thomas
Winchester, Kentucky

BRIEF FOR APPELLEE:

Stephanie Tew Campbell
James G. Womack
Lexington, Kentucky

---

[4] The 2020 Judgment mistakenly stated "Respondent" on both allocations, but the use of the pronouns "her" and "his," as well as the nature of the statements, left no question as to the court's intent.  Neither party challenges the error on this appeal.