RENDERED:  SEPTEMBER 5, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0338-ME

N.R.Z.                                                                   APPELLANT

v.            APPEAL FROM FRANKLIN CIRCUIT COURT
             HONORABLE SQUIRE WILLIAMS, III, JUDGE
             ACTION NO. 24-AD-00051

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; C.A.L.J., A
MINOR CHILD; AND L.J.                                        APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, EASTON, AND LAMBERT, JUDGES.

COMBS, JUDGE:  Appellant, N.R.Z. (Father), appeals from a decision of the

Franklin Circuit Court, Family Division, terminating his parental rights.  After our

review, we affirm.

N.R.Z. (Father) and L.N.J. (Mother) are the parents of a male child

C.A.L.J. (the child), who was born in early 2021.

On April 6, 2021, the Cabinet filed a non-removal DNA petition, No. 21-J-00061-001, due to concerns about Mother's substance abuse. The petition also alleged that Father was unresponsive to the Cabinet's attempts to reach him. On April 10, 2021, Father was served with summons. From the May 14, 2021, docket sheet order, it appears that Father was present at the non-removal hearing; however, it does not appear that he attended any hearings thereafter or that he completed an Affidavit of Indigence/Request for Counsel form.

According to the Cabinet's November 1, 2021, dispositional report, efforts to contact Father were unsuccessful. The Cabinet recommended that Father cooperate with the Cabinet to include notifying the social services worker (SSW) of all changes of address and phone numbers. The court adopted the Cabinet's report and recommendations in its November 5, 2021, docket sheet order, in which it ordered that the child remain in the home. On February 4, 2022, the case was closed due to Mother's compliance with her plan.

On November 10, 2022, the Cabinet filed a second non-removal DNA petition, No. 21-J-00061-002, due to concerns over mother's noncompliance. The court found the child to have been abused or neglected as alleged in the petition, but he remained in Mother's care. It does not appear that Father was served in that proceeding.

On May 31, 2023 -- before the second petition was disposed of, the Cabinet filed a third petition, No. 21-J-00061-003 (tail 003), alleging that Mother had left the child in a vehicle unattended; it further alleged that Father "is not present in [the child's] life. He is reported to be using illegal substances and he does have a current bench warrant."

On July 10, 2023, the Cabinet filed a fourth petition, No. 21-J-00061-004 (tail 004), alleging that hair follicle tests for Mother and the child were positive for THC (tetrahydrocannabinol, the main psychoactive substance found in marijuana); it also noted that Father "is not present in [the child's] life. He is reported to be using illegal substances and has a substantial history of substance abuse. [Father] currently has an active bench warrant."

On July 10, 2023, the court placed the child in the Cabinet's custody where he has continuously remained. On or about July 12, 2023, the family court appointed a warning order attorney for Father upon the Cabinet's motion. On July 14, 2023, Father was served with summons at the Franklin County jail, and counsel was appointed for him.

On September 29, 2023, petitions three and four were adjudicated, and the court found the child to be abused or neglected.

A November 30, 2023, case plan included in the Cabinet's Exhibit 3 reflected that Father's tasks were: to obtain and maintain stable housing; complete

a mental health and substance abuse assessment and follow all recommendations; obtain and maintain employment and/or sufficient funds to meet the needs of the family; complete random drug screens at the request of the Department of Community Based Services (DCBS) -- with the *caveat* that any missed or diluted screens would be counted as positive; complete monthly home visits with the social services worker; and enroll into and complete parenting classes, noting that Father "will demonstrate skills learned during visitation with [the child]." Father was given the same tasks again following a May 30, 2024, case plan conference.

The Cabinet's February 2, 2024, dispositional report reflected that the SSW had requested that Father complete a drug screen on multiple occasions and that he had not completed one. The report noted that the child was doing well in his placement since being placed with the relatives (paternal grandparents),[1] that he had made a lot of progress with his speech, and that the placement met his needs. The Cabinet recommended that Father complete the tasks of his plan and suggested that the court order Father to complete random drug screens. The court adopted the Cabinet's report and recommendations and ordered that the child remain committed to DCBS -- with "Dad to have random drug screens pd by DCBD as long as levels drop[.]"

---

[1] As the Cabinet observes in its Appellee's brief, the grandparents are a child-specific foster home for the child.

The Cabinet's May 7, 2024, report reflected that Father had not completed a drug screen and that he had had minimal contact with the Cabinet. The assessment was that Father needed to meet with the Cabinet, obtain and maintain sobriety, work his case plan, and visit with the child. The court's docket sheet order from the May 10, 2024, review adopted the cabinet's report and recommendations: that the child remain in DCBS custody and that Father have random drug screens paid by DCBS as long as his levels dropped.

The Cabinet's July 3, 2024, report reflected that the SSW had only very sporadic contact with Father and that he had not completed a random drug screen. The assessment reflected that SSWs are required to have approval prior to requesting a goal change to adoption, that the Cabinet had a meeting scheduled in that regard, and that there would be a request for a goal change to adoption for the child.

On July 16, 2024, the family court entered an Order at the annual permanency hearing changing the goal to adoption.

**The Termination of Parental Rights (TPR) proceeding**

On August 26, 2024, the Cabinet filed the subject petition for the involuntary termination of parental rights against Father and Mother. The Cabinet alleged that the child is an abused and neglected child as defined in KRS[2] 600.020;

---

[2] Kentucky Revised Statutes.

that it would be in the child's best interest that parental rights be terminated; that Father has abandoned the child for not less than ninety (90) days; that Mother and Father for not less than six (6) months continuously or repeatedly failed or refused to provide or have been substantially incapable of providing essential parental care and protection, considering the age of the child; that for reasons other than poverty alone, Mother and Father continuously or repeatedly failed to provide or are incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being; and that there is no reasonable expectation of significant improvement in the immediately foreseeable future considering the age of the child.

The matter was tried on December 14, 2024, and January 27, 2025. On February 27, 2025, the family court entered detailed Findings of Fact and Conclusions of Law (FFCL) and an Order Terminating Parental Rights and Order of Judgment, which we discuss further in our analysis below as relevant to the issues before us.

Father has appealed.[3]  As our Supreme Court explained in *Cabinet for Health and Family Services v. H.L.O.*, 621 S.W.3d 452 (Ky. 2021):

> The termination of parental rights is a particularly fact-sensitive inquiry, so appellate courts are disinclined to disturb a trial court's findings.  *K.H.*, 423 S.W.3d at 211.  Where the trial court's findings are not clearly

---

[3] Mother's parental rights were also terminated, but she has not appealed.

erroneous, and they substantially support the TPR, we will affirm the order. *Id.* "Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent minded people." *Rowland v. Holt*, 253 Ky. 718, 70 S.W.2d 5, 9 (1934).

It is a fundamental right of every parent to raise his or her own child. *K.H.*, 423 S.W.3d at 209. KRS 625.090 sets forth all the requirements which must be met before a court in Kentucky can involuntarily terminate a parent's rights to his or her child. Because of the heightened value of the right to parent a child, such proof must be clear and convincing in nature. *Santosky v. Kramer*, 455 U.S. 745, 747-48, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). The statute requires the court to find three critical elements. First, the court must find that the child has been found to have been abused or neglected by a court of competent jurisdiction. KRS 625.090(1). Second, the court must find at least one of the eleven enumerated grounds for termination exists. KRS 625.090(2). Lastly, even if the Cabinet establishes both of these elements, the court must still determine that termination is in the child's best interest. KRS 625.090(1)(c).

*Id.* at 462 (footnote omitted).

Father argues that the three-prong test was not satisfied. As to the first prong, Father contends that the family court's finding of abuse or neglect is not supported by clear and convincing evidence. The applicable version of KRS 625.090[4] provides in relevant part that:

---

[4] KRS 625.090 was amended effective June 27, 2025. All references herein are to the version in effect from July 14, 2022, to June 26, 2025.

(1) The Circuit Court may involuntarily terminate all parental rights of a parent of a named child, if the Circuit Court finds from the pleadings and by clear and convincing evidence that:

(a) 1. The child has been adjudged to be an abused or neglected child, as defined in KRS 600.020(1), by a court of competent jurisdiction; [or]

2. The child is found to be an abused or neglected child, as defined in KRS 600.020(1), by the Circuit Court in this proceeding[.]

In the case before us, the family court determined that the child "has been adjudged to be an abused or neglected child as defined in KRS 600.020(1) by a court of competent jurisdiction. Moreover, [the child] is found in this proceeding to be abused or neglected by each Respondent parent, as defined in KRS 600.020(1) . . . ." (FFCL, p. 9). As the Cabinet notes, Father's argument focuses solely on the independent finding of neglect in the **termination action**. However, Father does not challenge the finding that the child has been adjudged to be abused or neglected by a court of competent jurisdiction. The juvenile court record reflects that the child was adjudicated to be an abused or neglected child by Order of September 29, 2003. That unchallenged finding is sufficient to support the first prong of KRS 625.090.

Next, Father contends that the family court committed reversible error because it failed to discuss any findings in support of its conclusion that grounds for termination under KRS 625.090(2) exist. The essence of his argument is that

"upon careful review and reading of the Findings and Conclusions, the Family Court failed to point out and discuss the evidence from the record supporting its findings that KRS 625.090(e) and (g) factors exist at all."[5]  We disagree.

In *D.H. v. Cabinet for Health and Family Services*, 640 S.W.3d 736, 740 (Ky. App. 2022), we explained as follows:

> Factual findings are sufficient if they identify evidence of record to show that it [the court] complied with the statutory requirements and to allow for meaningful appellate review. *See Keifer v. Keifer*, 354 S.W.3d 123, 125-26 (Ky. 2011). . . . [T]he family court entered extensive findings of fact, followed by conclusions of law on each of the statutory elements.  While it is better

---

[5] In relevant part, KRS 625.090(2) provides as follows:

> No termination of parental rights shall be ordered unless the Circuit Court also finds by clear and convincing evidence the existence of one (1) or more of the following grounds:
>
> …
>
> (e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child; [or]
>
> …
>
> (g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child[.]

practice to state the factual bases for each conclusion, we conclude that the family court's factual findings are sufficient.

In the case before us, the family court also entered extensive findings of fact followed by its conclusions of law. Specifically, the family court found at pages 4-6 of its FFCL that:

> The Respondent father has failed to any [*sic*] even a single drug screen throughout the duration of the underlying abuse/neglect or the current actions. Despite multiple court orders and case plans that directed him to attend such screens, he testified he was unaware they were required of him until August 2024 but admitted that he still never attended any drug screens after that time.
>
> . . .
>
> The Respondent Father has been less compliant than even [Mother] and has yet to successfully complete any component of his Cabinet case plan. He chose to address his mental health/substance misuse issues at Crossroads starting in April 2024, after [the child] had already been in foster care for nine (9) months, but then failed to attend initial appointments there in April and May 2024. Cabinet Exhibit 6. He did attend an evaluation there on June 17, 2024 and was diagnosed with Opioid Use Disorder, Cannabis Use Disorder, and Generalized Anxiety Disorder. Id. Crossroads recommended that he complete their intensive outpatient program and parenting course. Id. By his own admission at trial, he has failed to engage in the recommended intensive outpatient program at Crossroads or anywhere else and has yet to successfully complete any parenting class approved by the Cabinet. He failed to cooperate with monthly home visits from the Cabinet and testified that he just recently secured

housing of his own. He has failed to provide any financial or other material support for [the child] since at least July 2023, despite having periods of employment. However, he does attend most visits with his son and interacts well with him. Unfortunately though, [Father's] failure to complete treatment services or attend drug screens and ongoing instability have failed to demonstrate adequate sobriety that might insure [the child's] safety if placed in his care.

Those findings are based upon clear and convincing evidence and support the family court's conclusion that grounds exist under KRS 625.090(e). Therefore, they are sufficient. "The statute requires only one of the grounds be proven by clear and convincing evidence." *T.P. v. Cabinet for Health and Family Services*, 697 S.W.3d 758, 762 (Ky. App. 2024).

Father's third and final argument is that the family court abused its discretion in finding that it is in the child's best interest that Father's parental rights be terminated. The standard of our review of a family court's best interest determination is abuse of discretion. *D.J.D. v. Cabinet for Health and Family Services*, 350 S.W.3d 833, 837 (Ky. App. 2011). "Absent a showing that a decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles, a family court's determination on the issue will not be an abuse of discretion and will be sustained." *Id.*

KRS 625.090(3) requires that the family court consider the following six factors in determining the best interest of the child:

(a) Mental illness as defined by KRS 202A.011(9), or an intellectual disability as defined by KRS 202B.010(9) of the parent as certified by a qualified mental health professional, which renders the parent consistently unable to care for the immediate and ongoing physical or psychological needs of the child for extended periods of time;

(b) Acts of abuse or neglect as defined in KRS 600.020(1) toward any child in the family;

(c) If the child has been placed with the cabinet, whether the cabinet has, prior to the filing of the petition made reasonable efforts as defined in KRS 620.020 to reunite the child with the parents unless one or more of the circumstances enumerated in KRS 610.127 for not requiring reasonable efforts have been substantiated in a written finding by the District Court;

(d) The efforts and adjustments the parent has made in his circumstances, conduct, or conditions to make it in the child's best interest to return him to his home within a reasonable period of time, considering the age of the child;

(e) The physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered; and

(f) The payment or the failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so.

In the case before us, the family court properly considered each of the statutory factors as set forth at pages 6-8 of its FFCL. The family court found that KRS 625.090(3)(a) was not a significant issue in this case, and Father raises no issue in that regard. Regarding KRS 625.090(3)(b), the family court found that

-12-

"the totality of the evidence presented at hearing is sufficient to convince this Court that the Petitioner child has been abused or neglected within the meaning of KRS 600.020(1)." The court cited the parents' substance abuse; neglect of the child's material, emotional and healthcare needs; failure or inability to comply with the court's remedial orders and the Cabinet's court-approved case treatment plan; and their inability to do what is necessary to financially support the child.

Reiterating his earlier argument, Father contends that "the finding of neglect for failure to comply with the Cabinet's court-ordered case plan is not clear and convincing" where he was not provided meaningful time to complete CrossRoad's recommendations. At page 12 of his Appellant's brief, Father states that "there is conflicting evidence whether an unreasonable belated time lapsed" for him to work the Cabinet's November 2023 or May 2024 case plans. "[C]lear and convincing evidence does not mean uncontradicted evidence. It is the prerogative of the court to determine the credibility of witnesses and the weight of the evidence." *R.P., Jr. v. T.A.C.*, 469 S.W.3d 425, 427-28 (Ky. App. 2015) (citations omitted). Moreover, "when the testimony is conflicting we may not substitute our decision for the judgment of the trial court." *P.S. v. Cabinet for Health and Family Services*, 596 S.W.3d 110, 118 (Ky. App. 2020) (citation omitted).

-13-

Regarding KRS 625.090(3)(c) (whether the Cabinet made reasonable efforts[6] to reunite the child with the parent), the family court found that the Cabinet made appropriate referrals to substance abuse counseling, parenting classes, random drug screens, supervised visitation sessions, mental health counseling, and various other services.  The court agreed with the Cabinet worker's assessment that she was unaware of any other services that would allow safe reunification within a reasonable period considering the child's age.  However, Father contends that the Cabinet failed to provide "all services" in light of CrossRoads' recommendation of additional services in its July 3, 2024 report.

The Cabinet argues that Father's failure to engage in the services offered does not mean that the Cabinet failed to provide reasonable efforts. We agree.  In *K.M.E. v. Commonwealth*, 565 S.W.3d 648 (Ky. App. 2018), the father argued that the Cabinet failed to make reasonable efforts by not providing him with an alternative parenting program after he moved out of state.  This Court disagreed and held that:

> CHFS referred Father to an abusive parenting program recognized by Kentucky.  That is the extent of its responsibility under KRS 620.020(11).

---

[6] KRS 620.020(13) defines "Reasonable efforts" as "the exercise of ordinary diligence and care by the department to utilize all preventive and reunification services available to the community in accordance with the state plan for Public Law 96-272 which are necessary to enable the child to safely live at home[.]"

The services that will be reasonable, and therefore required, depend on the facts and circumstances of each case. There may be a strong relationship between the definition of reasonable efforts and the court's findings with regard to parental attitude. If parents have made no attempt to comply with reunification plans initially developed by the Cabinet for Health and Family Services, it should not necessarily be incumbent upon the Cabinet to develop additional, proactive services for the family prior to termination of parental rights.

*Id.* at 658 (quoting Louise Everett Graham, James E. Keller, *Involuntary termination of parental rights—Reasonable efforts by Cabinet for Health and Family Services*, 16 KY. PRAC. DOMESTIC RELATIONS L. § 25:31).

Regarding KRS 625.090(3)(d) (efforts and adjustments made by the parent), the family court found that the Cabinet caseworker testified that as of the date of the filing of the TPR petition, the parents had not been fully compliant with the court's remedial orders -- particularly with respect to completion of drug screens, substance misuse evaluations and/or treatment. "As a result of all of the foregoing and more, the Petitioner child has been unable to return safely to their custody and care."

Father submits that at a minimum, there was "conflicting evidence as to whether the parents clearly and convincingly displayed no reasonable improvement." Father points to other evidence of improvement: that he now has a

home in Frankfort which met the Cabinet's standards; that he had enrolled in

technology classes; that his visits with the child went well; and that he has had no

further arrests, criminal charges, or convictions since July 2023. In essence, Father

reargues his case.

> A family court operating as finder of fact has extremely
> broad discretion with respect to testimony presented, and
> may choose to believe or disbelieve any part of it. . . .
> [A] reviewing court is not permitted to substitute its
> judgment for that of the family court, unless its findings
> are clearly erroneous. A factual finding is not clearly
> erroneous if it is supported by substantial evidence.

*Bailey v. Bailey*, 231 S.W.3d 793, 796 (Ky. App. 2007) (internal quotation marks

and citations omitted). Substantial evidence supports the family court's

determination as to this factor, and we may not disturb it.

Regarding KRS 625.090(3)(e) (the child's physical, emotional, and

mental health and the prospects for the improvement of the child's welfare if

termination is granted), the family court appropriately considered this factor.

Again, substantial evidence supports its conclusion that:

> [T]he child's physical, mental, and emotional needs have
> been met while in the Cabinet's care and custody and the
> child is expected to make continuing improvements in
> these areas upon termination of parental rights. The
> Cabinet social worker testified that she has visited
> regularly with the Petitioner child with the foster parents,
> who also are his paternal grandparents, and the child is
> doing much better since removal from parental custody
> and is attached to them both, who hope to adopt him.

Father's argument that child has no special needs requiring special care that he could not provide is unpersuasive.

Regarding KRS 625.090(3)(f) (as to support), the court found that he has failed to provide any financial or other material support for the child since at least July 2023 -- despite having had periods of employment. Father contends that this finding constitutes reversible error because there was no evidence that the Cabinet had ever sought child support from Father.

However, the family court's conclusion that termination of parental rights is in the child's best interest did not turn upon KRS 625.090(3)(f). It was simply one of the factors that the court was *required* to consider in conducting its best-interest analysis. The factors in KRS 625.090(3) are not a checklist. *D.G.R. v. Commonwealth, Cabinet for Health and Family Services*, 364 S.W.3d 106, 115 (Ky. 2012). "As the statute itself notes, the factors are to be 'considered' in deciding whether termination is in the child's best interest. They do not necessarily dictate a result and are always subordinate to the best-interest finding that the court is tasked with making." *Id.*

In the case before us, it was uncontroverted that Father failed to submit to even a single random drug screen -- despite court orders and case plans directing him to do so. As a result, Father could not demonstrate adequate sobriety

-17-

to ensure the child's safety if he were to be placed in Father's care. Clearly, that was a significant factor in this case.

We have found no abuse of discretion in the family court's determination that termination of parental rights is in the best interests of the child. Therefore, we affirm.

ALL CONCUR.

BRIEF FOR APPELLANT:

Sheila Galvez Kurtz
Frankfort, Kentucky

BRIEF FOR APPELLEE CABINET
FOR HEALTH AND FAMILY
SERVICES:

Leslie M. Laupp
Covington, Kentucky