RENDERED: SEPTEMBER 19, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0044-ME


J.I.M.          APPELLANT



APPEAL FROM MENIFEE CIRCUIT COURT
v.          HONORABLE ELIZABETH H. DAVIS, JUDGE
ACTION NO. 24-AD-00002



COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; K.J.C.,
A MINOR CHILD; AND C.L.M.          APPELLEES


AND


NO. 2025-CA-0047-ME


J.I.M.          APPELLANT



APPEAL FROM MENIFEE CIRCUIT COURT
v.          HONORABLE ELIZABETH H. DAVIS, JUDGE
ACTION NO. 24-AD-00003

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; X.W.M.,
A MINOR CHILD; AND C.L.M.                          APPELLEES


AND


NO. 2025-CA-0048-ME


J.I.M.                                              APPELLANT


APPEAL FROM MENIFEE CIRCUIT COURT
v.          HONORABLE ELIZABETH H. DAVIS, JUDGE
ACTION NO. 24-AD-00004


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; B.C.M.,
A MINOR CHILD; AND C.L.M.                          APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, KAREM, AND MOYNAHAN, JUDGES.

KAREM, JUDGE:  These appeals are taken from the Menifee Circuit Court's

findings of fact and conclusions of law and final orders and judgments terminating

-2-

the parental rights of J.I.M. ("Mother") to her three minor children. Mother brought individual appeals relating to each child, and the appeals were subsequently consolidated by order of this Court on June 12, 2025. Mother's counsel has filed a brief in accordance with *A.C. v. Cabinet for Health and Family Services*, 362 S.W.3d 361 (Ky. App. 2012), which applied the reasoning of *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), to hold that counsel representing a parent in a termination of parental rights case may withdraw if he or she cannot, following a thorough, good-faith review of the record, identify any meritorious grounds upon which to base an appeal. *A.C.*, 362 S.W.3d at 371. Counsel for Mother has concluded upon review of the record that there are no non-frivolous appellate issues to raise on Mother's behalf and, accordingly, has filed a motion to withdraw. We have conducted an independent review of the record and agree that there is no meritorious basis for appeal, *see id*. at 372; therefore, we affirm the circuit court's order terminating Mother's parental rights and grant counsel's motion to withdraw by separate order.

## FACTUAL AND PROCEDURAL BACKGROUND

This appeal concerns three children: K.J.C. ("Child 1"), who was born in 2012; B.C.M. ("Child 2"), who was born in 2018; and X.W.M. ("Child 3"), who was born in 2022. Child 1's biological father is deceased. Mother's husband, C.L.M., ("Father"), is the stepfather of Child 1 and the biological father of Child 2

and Child 3.[1]  Prior to Child 1's birth, Mother had two children who were removed from her custody for substance-related issues.  She subsequently voluntarily terminated her parental rights to these two older children.

The Cabinet for Health and Family Services became involved with the family when Mother gave birth to Child 3, in August 2022.  After she and the infant tested positive for methamphetamine, Mother admitted to using methamphetamine recently.  Her medical records indicated she had used methamphetamine throughout her pregnancy.  Child 3 suffered from withdrawal symptoms from methamphetamine and suboxone, which necessitated transferring him for a lengthy stay at the University of Kentucky hospital.

Mother and Father were thereafter contacted by KSTEP,[2] which serves families affected by substance abuse, but they refused to cooperate with the program.  They were thereafter ordered to complete two hair follicle tests, which were positive for methamphetamine on both occasions.  In November 2022, the children were removed from the home and placed with fictive kin.  After the fictive kin notified the Cabinet that she was no longer able to look after the children, they were placed in a foster home.  In February 2023, Mother and Father stipulated to neglect.  The goal of the Cabinet for the children was changed to adoption on

---

[1] The circuit court also terminated Father's parental rights.  He has filed separate appeals:  Nos. 2025-CA-0050-ME; 2025-CA-0052-ME; and 2025-CA-0054-ME.

[2] Kentucky Strengthening Ties and Empowering Parents.

December 16, 2023. The Cabinet filed petitions to involuntarily terminate Mother's parental rights in the children on February 21, 2024.

A final hearing on the petitions was held on November 25, 2024. Three Cabinet workers who had been involved with the family testified on behalf of the Cabinet. Mother and Father also testified.

Two major areas of concern emerged from the evidence elicited at the hearing: Mother's ongoing involvement with illegal drugs and her failure to cooperate with the Cabinet. The Cabinet presented evidence of ongoing illegal drug use by Mother. She was asked by the Cabinet to provide weekly drug screenings, but only submitted four tests over the course of a year, all of them positive for methamphetamine. Mother's criminal record was introduced into evidence. It showed that in August 2015, she entered a plea of guilty to assault under extreme emotional disturbance for cutting a woman with a sharp object. In October 2022, she was arrested for public intoxication – controlled substance after she was found slumped over the wheel of her car with a glass pipe containing black residue on the seat beside her. She told the police officer she had smoked meth earlier in the day. In 2023, she was charged with possession of a controlled substance in the first degree and tampering with physical evidence. She was incarcerated at the time of the final hearing.

The Cabinet workers testified that Mother signed only one case plan and did not complete the programs that were recommended for her, with the exception of one parenting class. Mother refused to allow Cabinet workers into the home to conduct inspections, and she and Father told a Cabinet worker not to get out of her car because they had a dog that would bite. Mother did allow a Cabinet worker into her kitchen on one occasion, but only because she was accompanied by a law enforcement officer. Another Cabinet worker testified that she was once allowed into the home by Father. She described the home as clean with three bedrooms for the children. She also saw the dog, which she testified was not aggressive.

A Cabinet worker testified that it was very difficult to contact Mother because she did not respond to phone calls or texts and kept evading drug screens. Another worker testified that Mother insisted on running everything from the Cabinet past her attorney, which led to lengthy delays.

Mother did attend visitation with the children, but she was frequently late and left early. Child 1 experienced anxiety regarding the visits and felt that her parents did not like her because they only brought gifts for the two younger children. The social worker testified that Mother told one of the children to "be bad" so they could be removed from the foster home and returned to their parents.

The social worker testified that the children have been placed together in the same foster home and are doing well. Child 2, for example, who has been diagnosed with ADHD and oppositional defiant disorder, is now receiving therapy. Mother and Father have not provided any funds to the foster family, although the children were sometimes given money to buy a toy. The social worker acknowledged that Mother and Father had not been ordered to pay child support.

Mother testified that she completed a variety of classes online, but she was unable to provide any proof of this. She blamed her situation on her former counsel, claiming he lied to her about the case and told her everything was going well. She testified that evidence of her previous clean drug screens was still in the possession of this former attorney. Mother also introduced evidence consisting of a notebook with notes and receipts totaling $13,000 for items she claimed she had purchased for the children. Mother testified that she is able to support the children because she runs her own business, but she did not disclose the nature of this business. When she was asked to provide a rough estimate of her income, she was unable to do so and directed the court to consult her accountant. When she was asked about her positive drug screens for methamphetamine, she testified that they were erroneous because they were positive for her prescribed medication, Adderall.

Following the hearing, the circuit court entered findings of fact, conclusions of law, and orders and judgments terminating Mother's parental rights in Child 1, Child 2, and Child 3. This appeal followed.

## STANDARD OF REVIEW

"An appellate court will only reverse a trial court's decision to terminate a parent's rights if such decision is clearly erroneous, meaning there is no substantial, clear, and convincing evidence to support the decision." *P.S. v. Cabinet for Health and Family Services*, 596 S.W.3d 110, 115 (Ky. App. 2020); Kentucky Rules of Civil Procedure ("CR") 52.01. "Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people." *M.P.S. v. Cabinet for Human Resources*, 979 S.W.2d 114, 117 (Ky. App. 1998) (quoting *Rowland v. Holt*, 253 Ky. 718, 726, 70 S.W.2d 5, 9 (1934)). "The termination of parental rights is a particularly fact-sensitive inquiry, so appellate courts are disinclined to disturb a trial court's findings." *Cabinet for Health and Family Services v. H.L.O.*, 621 S.W.3d 452, 462 (Ky. 2021). Thus, if the trial court's findings are not clearly erroneous and they substantially support termination, we will affirm the order. *Id.*

## STATUTORY FRAMEWORK

A circuit court may involuntarily terminate an individual's parental rights if the court finds by clear and convincing evidence the existence of three critical elements. *H.L.O.*, 621 S.W.3d at 462 (citing Kentucky Revised Statutes ("KRS") 625.090). First, the circuit court must find that the child has been adjudged to be an abused or neglected child, as defined in KRS 600.020(1), by a court of competent jurisdiction or by the circuit court itself in the termination proceeding. KRS 625.090(1)(a)1. and 2. Second, the court must find the presence of at least one of the eleven grounds listed in section (2) of the statute. KRS 625.090(2)(a)-(k). Third, termination of parental rights must be in the child's best interest, and the court is provided with a series of factors that it shall consider when making this determination. KRS 625.090(1)(c); KRS 625.090(3).

## ANALYSIS

The circuit court found under the first element, KRS 625.090(1), that Child 1, Child 2, and Child 3 were abused or neglected children because both parents stipulated to neglect on February 21, 2023.

Under the second element, the circuit court made findings under KRS 625.090(2)(e) and (j) that the parents, for a period of not less than six months, continuously or repeatedly failed or refused to provide essential parental care and protection for the children, with the result that the children had remained in foster

care for more than fifteen of the previous forty-eight months and that both parents had engaged in a pattern of conduct, due to drug abuse, for a period of not less than ninety days that rendered them incapable of caring for the children's immediate and ongoing needs.

The circuit court noted that the parents admitted to testing positive for methamphetamine on multiple occasions after the children were removed from their care and that Mother tried to explain her positive drug test as being due to prescription medication, even though she had entered a guilty plea to felony possession of methamphetamine. The court found that the Cabinet had attempted to render services to Mother, but she refused to participate except for completing one parenting class. Although she claimed to have completed multiple other services, she provided no proof and did not sign a release to allow the Cabinet to monitor her progress. The court found that the parents made no adjustments to facilitate the return of the children. They continued to test positive for methamphetamine and did not complete substance abuse treatment. The court found that Mother did attend visitation with the children, but noted there were occasions when it had to be stopped, or she left early.

The court acknowledged that the record was unclear as to whether the parents had contributed a reasonable amount to the children's physical care and maintenance, noting that the social worker's testimony that child support was

-10-

never ordered in the case due to administrative error. The court described both parents as being strangely evasive when testifying about their income. The court acknowledged that Mother submitted a handwritten list of expenditures allegedly made on the children's behalf while they were residing with the fictive kin, but described the list as hearsay of limited probative value. The court nonetheless concluded that the Cabinet did not prove, by clear and convincing evidence, that the parents failed to pay a reasonable portion of care and maintenance and concluded that this lone factor weighed against termination.

As to the children's best interests, the circuit court found pursuant to KRS 625.090(3)(b) that the children had been neglected and the youngest child had been born substance affected. The court further found pursuant to KRS 625.090(3)(c)1. that the Cabinet had rendered or attempted to render reasonable services to Mother in an effort to reunite her with the children, but that Mother had failed to take advantage of these services. Although she claimed to have completed a multitude of services, she offered no proof and failed to sign a release so the Cabinet could monitor her progress. The court acknowledged that she had completed a parenting class, but that this, without more, was inadequate to permit the safe return of the children. Under KRS 625.090(3)(d), the court found that Mother had made virtually no adjustments to her circumstances, conduct, or condition to allow for the return of the children, noting that she continued to test

-11-

positive for methamphetamine, received a new felony conviction for the possession of methamphetamine, and failed to complete any adequate substance abuse treatment. The court further found that Mother failed to maintain communication with her social worker and restricted her access to the home. Under KRS 625.090(3)(e), the court found that the children were receiving their necessary treatments and therapies and that their physical, emotional, and mental health would continue to improve if termination was ordered.

Mother's counsel has attempted to identify some issues which could form the basis of an appeal on accord with his duties under *A.C.* There is evidence that Mother completed some case planning tasks, such as the parenting course, and, according to her testimony, an online anger management course, and she made some effort to visit the children. Mother also testified that her private attorney failed to keep her informed about the case and did not provide the Cabinet with her drug screens. However, the Cabinet social workers testified that despite their efforts, Mother refused to cooperate sufficiently and work her case plans to reunify with the children. Furthermore, her failure to maintain a safe, sober lifestyle kept her from providing care and support for the children.

Mother also contended in her testimony that she was able to provide for the children and that, but for her private attorney's actions, she would have been fully compliant with the Cabinet's case plan. However, there was evidence of

long periods during which Mother continued to fail to make progress towards reunification, and the circuit court did not abuse its discretion in finding that the likelihood of any improvement on Mother's part was very low.

## **CONCLUSION**

The circuit court made findings supported by clear and convincing evidence under the factors in KRS 625.090. We have conducted a careful review of the record and agree that there are no non-frivolous grounds that could form the basis for reversing the circuit court's termination of Mother's parental rights. *A.C.*, 362 S.W.3d at 371. For these reasons, the Menifee Circuit Court's orders terminating Mother's parental rights in Child 1, Child 2, and Child 3 are affirmed.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Ira S. Kilburn
Salt Lick, Kentucky

BRIEF FOR APPELLEE CABINET
FOR HEALTH AND FAMILY
SERVICES:

Dilissa G. Milburn
Mayfield, Kentucky